UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Kathleen E. Cherok</u>

    v.                          Civil No. 06-cv-125-JD

<u>Jo Anne B. Barnhart, Commissioner</u>
<u>Social Security Administration</u>


<u>O R D E R</u>

Kathleen E. Cherok brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision by the Commissioner of the Social Security Administration denying her application for Title II benefits.  Cherok contends that the Administrative Law Judge ("ALJ") failed to give appropriate weight to the opinion of her treating physician and erred in finding that her subjective complaints of pain were not entirely credible, which led to an erroneous residual functional capacity finding.  The Commissioner moves to affirm the decision.


<u>Background</u>

Cherok applied for social security disability benefits on October 7, 2002, alleging that she had been unable to work since August 1, 1994, when she was thirty-two years old, because of impairments caused by complications of juvenile diabetes.  She had worked as an administrative assistant, from 1980 to 1992, and

then did a series of short-term jobs between 1996 and 2002.  She was insured for disability benefits through June 30, 2000.

On July 7, 1997, Cherok began treatment at the Joslin Diabetes Center.  Her treatment notes there indicate that she said she had been fired from her job because of her diabetes. The treatment notes also indicate that her diabetes was under poor control, that she had anxiety, that her sugar levels were sensitive to stress, and that she possibly had gastroparesis (paralysis of the stomach).

Dr. Paul Friend at the Tilton Family Health Center saw Cherok beginning in July of 1997.  He noted that Cherok was anxious about the extent and progressive nature of her diabetes. Dr. Friend prescribed Valium and suggested that Cherok see a counselor.  In January of 1998, Cherok saw Dr. Friend for back pain.  Cherok also saw Dr. Richard Beaser at the Joslin Diabetes Center because of tingling in her hands.  In April, Cherok again saw Dr. Friend because of back pain after she had lifted boxes in the course of traveling.  Dr. Friend prescribed Tylenol with codeine.

Cherok's next medical record is from February of 1999 when she was seen at the Joslin Diabetes Center.  After that appointment, Dr. Beaser wrote to Cherok to give her the results of her diabetes testing which showed that her disease was poorly

2

controlled.  In March, Cherok saw Dr. Friend and explained that financial concerns had kept her from seeking medical care during the previous months.  Dr. Friend's treatment notes show that Cherok had had problems with her vision caused by diabetes and that her diabetes was not well controlled.  He noted that her back pain was much improved.  In August of 1999, Dr. Friend wrote that Cherok's diabetes was out of control, and he referred her to Dr. Barrett Chapin.  Dr. Chapin saw Cherok in November of 1999, recorded a history of her disease, and changed her insulin regimen.

In 2000, Cherok underwent a stress test with normal results. Dr. Friend noted worsening symptoms of gastroparesis.  In August, Cherok had right shoulder pain that was diagnosed as bursitis. Dr. Friend prescribed Reglan for her gastroparesis symptoms in November.  In 2001, Cherok had an anxiety attack for which she was prescribed Ativan.  She also dropped a wooden cover on her foot and bruised her toes.

Dr. Charles Meader, a state agency physician, provided an assessment of Cherok's physical capacity in December of 2002, based on a review of her medical records.  He concluded that she could lift up to ten pounds frequently and up to twenty pounds occasionally, could sit for six hours during an eight-hour work day, and had no postural limitations.  Dr. Meador noted on his

assessment form that Cherok did not have gastroparesis symptoms
until after June 30, 2000.

Dr. Friend referred Cherok to Dr. Vijay Thadani in March of
2003.  On March 31, Dr. Thadani reported that Cherok had fallen
about a month before and landed on her back and then developed
radiating paresthesis with numbness and tingling along her left
leg.  The night before the appointment, Cherok felt anxious and
then her whole left side, except her face, went numb.  She told
Dr. Thadani that she had weakness on that side.

In August of 2003, Dr. Friend assessed Cherok's physical
capacity to do work-related activities.  He concluded that she
could lift or carry only up to ten pounds, could walk or stand
for less than two hours in an eight-hour work day, and was
precluded from all postural activities such as climbing,
stooping, kneeling, and crouching.  Dr. Friend indicated that
Cherok was having problems with her back, her leg, and her right
hand.  Dr. Friend also wrote a note, dated October 12, 2003, in
which he stated that Cherok's attorney had asked him to comment
on her limitations before June of 2000.  In that regard, he said
that Cherok's "limitations have not changed significantly over
the time that I have cared for her.  She has gotten worse
concerning her left leg symptoms but the back pain which is
related and her gastroparesis have not changed and did exist

4

prior to [June 30, 2000]." Admin. Rec. at 416.

In September of 2003, Dr. Thadani assessed Cherok's physical capacity for work and noted that she was limited due to a transient ischemic attack in March of 2003, diabetic neuropathy, and poorly controlled diabetes that caused chronic left leg pain and weakness and chronic fatigue. He found that Cherok could only stand for fifteen minutes at a time, could sit for two hours and walk or stand for less than two hours, would require an option to sit or stand at will, could carry less than ten pounds occasionally, could rarely twist or stoop, and could never crouch or climb ladders. Dr. Thadani also noted that Cherok would require unscheduled breaks during the work day, would need to rest for fifteen to thirty minutes before returning to work, and would be absent frequently.

A hearing on Cherok's application for benefits was held before ALJ Ruth Kleinfeld on October 8, 2003. Cherok described her previous work, including her unsuccessful efforts to work. She testified that she stopped working after a few months in each case because complications of her diabetes, gastroparesis, numbness in her hands and fingers, and vision problems, caused excessive absences and interfered with her ability to do the work. Some additional medical evidence was submitted to the ALJ after the hearing, including Dr. Friend's letter that is quoted

above.

ALJ Kleinfeld issued her decision on May 25, 2004, in which she found that Cherok's diabetes was a severe impairment before June 30, 2000, but that Cherok's allegations about her limitations were not entirely credible.  The ALJ concluded that Cherok retained the functional capacity to do her past work as an administrative assistant during the insured period.  The Appeals Council denied Cherok's request for review, making the ALJ's decision the final decision of the Social Security Administration.

## Discussion

Cherok asks the court to reverse and remand the decision denying her application for benefits.  She asserts that the ALJ failed to give Dr. Friend's opinion about her limited physical capacity appropriate weight and erred in concluding that her allegations about the limitations caused by her disease were not entirely credible, which caused the ALJ to make an erroneous residual functional capacity finding.  The Commissioner asks the court to affirm the ALJ's decision.

The court must uphold a final decision of the Commissioner to deny an application for benefits unless the decision is based on legal or factual error.  Manso-Pizarro v. Sec'y of Health &

<u>Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (citing <u>Sullivan v.</u>
<u>Hudson</u>, 490 U.S. 877, 885 (1989)).  The Commissioner's factual
findings are conclusive if based on substantial evidence in the
record.  42 U.S.C. § 405(g).  Substantial evidence is "such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389,
401 (1971) (internal quotation marks omitted).  In making the
disability determination, "[i]t is the responsibility of the
[ALJ] to determine issues of credibility and to draw inferences
from the record evidence."  <u>Irlanda Ortiz v. Sec'y of Health &</u>
<u>Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).  The ALJ's fact
finding is "not conclusive when derived by ignoring evidence,
misapplying the law, or judging matters entrusted to experts."
<u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999).

     In concluding that Cherok was not disabled from her former
work as an administrative assistant, the ALJ found that Cherok
retained the functional capacity to do a full range of light
work.  She stated that her finding was "consistent with the
minimal findings noted by Dr. Chapin in November 1999 and by Dr.
Friend in October 2002."  Admin. Rec. at 29.  As such, the ALJ
relied on Dr. Chapin's note in November of 1999, stating that
Cherok had no known complications of diabetes.  That note,
however, was contrary to the medical record that documents

7

gastroparesis since 1997 and other diabetes-related symptoms
thereafter.  The ALJ did not address that discrepancy, did not
explain her reliance on an absence of information, and did not
distinguish the medical records that documented Cherot's
symptoms.

The ALJ also cited an examination record by Dr. Friend,
identified as a "disability exam."[1]  Admin. Rec. at 350.  The ALJ
noted that Dr. Friend did not find that Cherok was disabled.  She
also noted Dr. Friend's findings that Cherok's range of motion,
vision, reflexes, motor functions, and sensory function were all
normal.  The ALJ did not discuss or even cite Dr. Friend's
residual functional capacity assessment done in August of 2003,
which is relevant to the disability determination due to his
opinion that Cherok's limitations had not changed significantly
since June of 2000.

The ALJ also appears to have ignored the medical records
documenting Cherok's gastroparesis and other complaints related
to diabetes.  The only residual functional capacity assessment
that supports the ALJ's findings was done by the state agency

---

[1]In her first reference to this medical evidence, the ALJ
cited a page number and noted that the examination was for
Cherok's disability application but mistakenly wrote that the
examination was in April of 2001 when the record is actually
dated October 31, 2002.  Later in her decision, the ALJ refers to
Dr. Friend's findings in October of 2002.

8

consulting doctor in December of 2002.  As Cherok's attorney
noted at the hearing before the ALJ, the state agency doctor
mistakenly believed that Cherok was not suffering with
gastroparesis before June of 2000, which undermines the
reliability of his assessment.  Although the ALJ did not cite or
refer to that assessment, her findings suggest that she relied on
it nonetheless.

Further, in finding that Cherok was not disabled, the ALJ
focused on Cherok's physical ability to function at a light
exertional level but failed to address the diabetes-related
effects of chronic gastroparesis, vision disturbances, and
intermittent sensory disturbances due to neuropathy.  In the
social security context, "[t]he term 'disability' means -- []
inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. §
404.1527(a)(1); see also Barnhart v. Thomas, 540 U.S. 20, 23
(2003).  To be found not disabled, a claimant must be both
physically able to perform work and able to sustain her work
effort for a significant period of time.  See Frank v. Barnhart,
326 F.3d 618, 621 (5th Cir. 2003); Watson v. Barnhart, 288 F.3d

212, 217–18 (5th Cir. 2002); Gatliff v. Comm'r of SSA, 172 F.3d 690, 693–94 (9th Cir. 1999) (citing cases); Dix v. Sullivan, 900 F.2d 135, 138 (8th Cir. 1990).  Work that continued for only six months or less, when a claimant's impairment forced her to stop working, is not evidence of her ability to do substantial gainful activity.  § 404.1574(c).

The ALJ found that Cherok's work attempts in July and August of 2000 and again in July and August of 2002 were unsuccessful. She also found that Cherok had not engaged in substantial gainful activity since 1994.  The ALJ did not address the various jobs that Cherok attempted between 1996 and 2000, which included working as a secretary at the New Hampshire Community Technical College, delivering flowers for a florist, and supervising housekeepers for a condominium management company.  Cherok testified that she left those jobs because of the effects of gastroparesis and neuropathy in her hands.

Cherok's unsuccessful work experiences strongly suggest that she had difficulty working on a regular and sustained basis.  In addition to Cherok's testimony, her former employer at the New Hampshire Community Technical College, where she worked in 1997, wrote that Cherok only worked there for a few months because her illness, which caused severe eye, headache, and digestive problems, caused so many absences.  Even if the ALJ's residual

10

functional capacity assessment were correct, more attention should have been paid to the issue of whether Cherok was capable of sustained gainful employment before June 30, 2000.

Because the ALJ ignored important evidence and relied on questionable evidence to support her decision, that decision must be reversed and the case remanded for further proceedings.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to reverse and remand the Commissioner's decision (document no. 7) is granted.  The Commissioner's motion to affirm (document no. 8) is denied.

The case is remanded pursuant to "sentence four" for further administrative proceedings.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 5, 2006

cc:  David L. Broderick, Esquire
     Raymond J. Kelly, Esquire